Good afternoon. Will the attorneys who are going to argue the case please approach the podium, identify yourselves, and indicate to the court how much time you want for argument. Keep in mind that the microphone is for recording purposes only, not for amplification. So if you want everybody to hear what you say, speak up please. Sir, would you be nice enough to close that door please? Thank you. Yes sir. Your Honor, I'm Assistant Public Defender Armando Sandoval. I'm here on behalf of Anthony Alexander. I'm asking to reserve five minutes for rebuttal. Very well. Good afternoon. Assistant State's Attorney Christine Cook on behalf of the people. Good afternoon. Very well. Mr. Sandoval? Yes, Your Honor. Please proceed. Thank you. May it please the Court, counsel for the State. The issue I'd like to discuss today deals with due process, the importance of court-reported transcripts, and the negative impact of an error in a court-reported transcript that it has on one's due process rights. Generally speaking, due process, we're talking about fairness, particularly in the criminal justice system. And in terms of due process, court-reported transcript is very important. A prime example would be today, here before the appellate court. The appellate court and the appellate process depends on court-reported transcripts of what happens at the lower court, in particular at the trial level of 26 in California, because presumably we weren't there. We don't know what happens on each court date, at every proceeding. But even if we were there, say I was there for Mr. Alexander at the trial level, because of the fact that memories fade over time, or if we took notes on our half-sheets or bluebacks, we might miss something in our notes that are very important. And that's mainly due to what I'm going to term as trial-court multitasking. While we're asking questions and waiting for response or listening, at the same time we're trying to form our next question or argument or anticipate an objection. So when you couple that with memory fading over time, that's why we rely on court-reporters, who are basically non-interested, third-party professionals who attest to the veracity and accuracy of the transcripts. Did the court-reporter in the question in this case testify in any manner before Judge Brown? No, Your Honor. Why was that? At the motion for new trial, after the verdict, defense attorney did, as part of the motion for new trial, did subpoena the court-reporter and her supervisor. At first, he was told that they weren't going to follow through with the subpoena. But then later on, they were brought in, Judge Brown at that point, and Chambers spoke with the court-reporter and the supervisor. But there was no testimony per se. Did the defense counsel ask for testimony? He did, Your Honor, as part of the hearing. Pardon me? As part of the motion for new trial, he did request. And when the court-reporter was up there and ultimately excused by Judge Brown, did the public defender object or ask for sworn testimony from the court-reporter? No, Your Honor. And I apologize in advance. That I'm not sure of. I know that there was an issue as to the audio. But Judge Brown made it clear that at that time the subpoena was complied with. They did have the notes from the court-reporter. Was any objection made to that conclusion? I don't believe so, Your Honor. Okay. And it seems to be agreed that between the point in time when the motion to suppress was conducted and the point in time when the trial attorney in the middle of the trial called the court-reporter to confirm the accuracy of the motion to suppress, the trial attorney was advised that, no, there was a mistake. And the mistake was discovered by me when I listened to the audio. I typed it. And then the audio, for some reason, was destroyed or misplaced or lost or whatever. Right? Correct. And that's the state of the record. And Judge Brown, I believe, found that there was nothing untoward about losing the audio. No. Okay. So what you have here, it seems to me, is a situation where a trial attorney asked a question that the witness, at best, in your position, at best said, I wasn't asked that question. If that is impeaching, did your office, the trial lawyer, have an obligation to perfect that impeachment if it was impeaching? Yes. And was that impeachment perfected? It couldn't be perfected because, as you indicated, Your Honor, he did call the court-reporter during the middle of the trial. Right. And at that point, that's when he learned about the mistake, which I would argue was a reasonable time for the defense to learn of this mistake. But you agree it was a mistake. The transcript was mistakenly transcribed. Yes. Okay. Because now you're in a position where you cannot perfect whatever purported impeachment exists. Correct? Correct. So what's a trial judge to do at that point with the state of the record? Is he to allow the unperfected impeachment to stand, or is he to strike the attempted impeachment so that it's not properly considered by the jury? That's the question I have for you. Well, since defense counsel could not properly perfect impeachment due to that error that he learned. Right. At that point, the judge was correct in not allowing to go along with the impeachment. Striking that portion of the testimony that the jury heard. Correct. That's a reasonable thing for the judge to do at that time. Okay. The issue becomes, though, due process. Because at that point, because of that mistake due to the court reporter either mishearing or whatever happened back at the motion to quash April 10, 2014, that court reporter put it in the transcript. And the due process problem is this. Given that transcript that was certified as accurate by the court reporter as to what happened during the motion, that detrimentally affected defense negotiations with the state in terms of any pleas. I believe the record, it indicates that there was an offer of a minimum at six years. Where is that reflected in the record? That's reflected, I believe, in the motion for new trial when they asked again for a mistrial that as part of the negotiations, and I believe the state also mentions at a point that they were offering the minimum on this case, but that the client, according to the defense attorney, wouldn't take the offer because of that impeachment that was in the transcript. So I can only assume that when the state said the minimum on a delivery of controlled substance within 1,000 feet, that's a class X offense, it was six years that was offered prior to the trial. Did the defendant, after he learned that he was unable to perfect the, I call it purported impeachment today, but real problem whether it was impeachment or not. But let's assume it was for your purposes. Did the defense ever attempt to reopen the negotiations and to take the original offer? During trial, that's not clear. During the trial, there's no indication that they did do that. During the trial to reopen after this impeachment error was... In other words, oh boy, I got a problem, I'll take your earlier offer. I can't tell from the record if that's what happened. I do know from the record, though, that, and it's there, that after closing arguments and after the jury instructions were given and after the jurors were placed in the room for deliberations, defense counsel did make a motion at that point for a mistrial and told the judge that because of that error that they learned about during the trial, that error set the tone in terms of the pre-trial negotiations, set the tone in terms of defense strategy. And although it may be a minor point as to where, as to whether the drugs were recovered from Mr. Alexander's hoodie pocket or coin pocket, given the case that it was, the fact pattern. It's a delivery control substance within 1,000 feet. It's a very simple fact pattern. Officers on patrol see what they suspect is a hand-to-hand transaction. They stop the suspected buyer. The buyer drops the drugs. They go back to Mr. Alexander, the suspected seller, and the officer says he finds drugs on Mr. Alexander. And Mr. Alexander is the one he observed circumstantially selling the drugs. Correct. The issue, though, is in terms of due process and for the defense to come up with not only pre-trial negotiations, but whether if the client, and ultimately the client did, but in terms of formulating a trial strategy, given the fact pattern and given that the only real eyewitnesses were the officers, the only line of defense at that point was to argue somehow the officers are not credible. And the way to do that would have been through the impeachment on the motion to quash. So when that went on in the transcript, it says that instead of hoodie pocket, the officer says in the affirmative, no, I found it in the coin pocket. That goes towards the defense's theory. But that's not what the transcript originally said. From the motion to quash? Right. The transcript went, did you find the drugs in his coin pocket? Yes. Yes. Okay. That's what that transcript purportedly said that was found to be an error. So where does the due process violation take place? Who violated his due process rights? The court reporter? The court? The state's attorney? I would say at that point it was the court. When they told Judge Verner that because of this error in the court transcript from the motion to suppress, that that set the whole tone for the defense in terms of trial strategy and affected negotiations, that at that point when they addressed the court and told the judge what happened, that the abuse of discretion was there because at that point the judge knew that there was some type of mistake of fact, that no one was disputing. Even during the trial, the state indicated that there was a mistake in the transcript. So at that point, Judge Verner reasonably could have said, okay, because of this mistake, I'm declaring him in this trial. We start from pretrial, knowing now that the certified as accurate court transcript that everyone was relying on. But the problem is that Judge Verner did allow a purported impeachment to go forward. Once the officer simply said, no, I never said that, then whether it was the coin pocket or the hooded pocket, as you said already, that it probably was such a small issue that it didn't even matter in the whole scope of things. Well, and I apologize. When I said small issue, what I meant was that given the type of case that it was, hooded pocket versus coin pocket, it does matter in terms of the credibility of the officer as to where they recovered the drugs from the individual. With respect to the possession charge, you just conceded that it was a straightforward case on the sale. Two police officers see the hand-to-hand exchange of something. They get out of the car, they grab one, hold the other, find the dope on the one who walked away and search your client and find the dope on him. So the sale part of it, what difference does it make on the sale charge of where they found the drugs? In terms of trial strategy for defense, it still cuts to the credibility of the officer. If the officer was not clear as to the simple issue as where the drugs were recovered off of the defendant, it goes towards do they actually, arguably, do they actually see a hand-to-hand transaction? The argument would be if the hypothetical would be what if the transcript was correct? Right. Then the argument would be, well, if the officers can't get where they recovered the drugs from Mr. Alexander correct, how can we say that they're correct or credible as to the issue of whether they saw a hand-to-hand transaction? But the question becomes whether or not it affected the fairness, integrity, and the reputation of the judicial process. And to argue that whether it was the hoodie pocket or the coin pocket, does it rise to that level, that it affects the fairness, integrity, and public reputation of the judicial process? It does. Because, again, we're dealing with a court reporter transcript that is certified as accurate, that we rely upon. Because of that, today when we look at the transcript on another case, because we weren't there, and say, oh, this is what happened on court on that day because that's what the transcript says. The due process issue is this. When the defense attorney and Mr. Alexander received that transcript, at that point, they can assume that what the officer said during the motion to quash is what the officer testified to during that day. And during the trial, if he were to say something else, then we can go back to the motion to quash and say, no, isn't it true that on February 10th, 2014, when the state's attorney asked you that it came from the coin pocket, you said yes. I'll go ahead and finish. So the due process issue is that because of the court reporter error, it detrimentally impacted how the attorney and the defendant looked at the case, which in turn detrimentally impacted how the defendant and the defense attorney handled whatever pretrial negotiations and offer from the state and related to the client. It detrimentally impacted that because set in that first transcript, again, that's certified as accurate, is that issue for impeachment. But it wasn't quite that clear cut, wasn't it? Didn't that transcript have another part in it where the defense attorney at that hearing referred to the hoodie pocket? Yes. So in that transcript, it had on its face an inconsistency. At one point, the court reporter wrote down coin pocket, but at another point, wrote down hoodie pocket. And it was actually said by the defense attorney. So doesn't that kind of alert you a little bit that there's something amiss? It couldn't be both or something? Arguably, though, just looking at the transcript and the defense attorney not knowing of that error, perhaps he heard coin pocket that the officer said, and on redirect, wanted to make clear, well, to argue later. Well, in the other reports, you say hoodie. Before the cross from the state, you said hoodie. And now on cross. Was the defense lawyer at the motion to suppress the same defense lawyer in trial? Yes. Was there anything stopping that defense lawyer from asking the court, judge, I'd like to testify. I was there. I asked the question. I said coin pocket. He answered this way. He could have perfected the impeachment. Yes, but the trial strategy. The trial strategy. Didn't the state's attorney have the same transcript that the defense lawyer had at trial? Yes, Your Honor. Presumably, the state's attorney read the same coin pocket language as the defense lawyer did. Yes. Presumably, the state's attorney offered a better deal if he pled rather than went to trial. Yes. I'm still struggling. Who violated the defendant's due process rights? Was it a state action that caused this depredation that you claim exists? Yes. It stems from the court reporter. Again, it stems from the court reporter that put in that error in the transcript. That mistake. That's the due process violation. The fact that everything was negatively impacted from February 10, 2014 on. And even after the defense counsel called the court reporter during trial, learned of the error, defense counsel made no attempt to call the court reporter as a witness during the trial. Is that correct? That's correct. And that was because at that point he couldn't perfect the impeachment. He learned of the error. Getting back to Judge Pierce's point about the delivery or sale, the bag that was dropped by, I forget the fellow's name, up on the porch, that was the one that was the transaction. The seller ended up with money and the person on the porch ended up with the bag. Correct. And that has nothing to do with the hoodie or the coin pocket? No. Okay. No. But it does go, again, that issue of where the drugs were recovered goes to the defense of whether these officers are credible. And didn't the markings on the bags, the markings that said spades or something on them, five spades, they were exactly the same, correct? I believe so. As Mr. Smith dropped, running up the stairs, and the same that they recovered from the defendant. That's correct. But, again, the recovery of those drugs is a material issue as to the case. And I know that the trial judge did allow testimony about the fact that the state did not do anything from analysis or didn't do any DNA analysis on the packets. That was all presented to the jury, correct? Correct. Correct. The only evidence they had was the eyewitness testimony of this officer who testified at the motion to quash. Who testified that he saw the hand-to-hand delivery. Correct. And that he recovered drugs from either the hoodie pocket or coin pocket. Yes. And his partner testified. And his partner testified as well. So two eyewitnesses. Two eyewitnesses. Two circumstantial witnesses. Recovery of the narcotics. Correct. And recovery of what they saw exchange between the fellow on the porch and the defendant. Correct. What else would you like to raise? Josh, at this point, I believe that I argued that the issue that I believe is most important in this case in terms of the due process, the error that was made in the motion to quash transcript, the defense counsel learned at a reasonable time, which was in the middle of the trial. And at that point, he didn't make the proper motion for a new trial that was denied. And so in terms of a remedy, I'd be asking that the conviction be vacated and the matter be remanded back for further proceedings. So at this time, I'll surrender to balance my time at the State and perhaps come back for more. Thank you. Ms. Cook. May it please the Court, counsel, Justice Pierce, you're absolutely right. A due process violation of what? There's no due process violation here. A mistake in a court-reported transcript does not, cannot, and will not ever be tantamount to a constitutional violation. And let's be very clear about this record, which is very clear on its own. Officer Hammerhand's credibility was never an issue and was never compromised. He testified always at the motion to suppress and at the trial that he recovered 32 packets of heroin and 13 packets of cocaine from the defendant's hoodie pocket. There was no impeachment to be had based on an incorrect court transcript, which defense counsel had to have known was incorrect for three reasons. First of all, the coin pocket. That's obviously wrong. First of all, a coin pocket is that there's no way 32 packets of heroin and 13 packets of cocaine are going to fit into a coin pocket. And, Justice Griffin, as you noted, defense counsel even asked a follow-up question on the suppression motion. Quote, when you recovered whatever it was, the suspect narcotics from him, were they in his hands or were they in his hoodie pocket? Answer, they were in his hoodie pocket. The whole basis for the suppression motion was one of probable cause. Had Officer Hammerhand actually testified at the motion that he had recovered anything from the coin pocket, defense counsel would have had yet another reason for the trial court to grant that motion, the inconsistent, incredible testimony of Officer Hammerhand. He never made such an objection and no argument was ever made because that question was never asked of Officer Hammerhand. Further, there was no argument about the inconsistency or the impeachment of Officer Hammerhand at the time of the motion to suppress. Only the probable cause issue remained and that was decided against the defendant. Further, there's a second error in the transcript. Officer Hammerhand's partner was Bouch, B as in boy. The transcript has his name misspelled. Defense counsel should have known that that was a mistake because he has all the arrest reports and Officer Bouch's name is in those. That should have been a second clue that something was wrong with that transcript before you went to trial. And the most glaring of all, that Officer Hammerhand had been on the job for 212 years. Now, I don't know what Officer Hammerhand looks like, but I bet he would have taken his retirement before he hit the 200 years. That alone should have been the biggest red flag to defense counsel that something was wrong with that transcript. But as the prosecutor noted and the trial court agreed, this defense counsel and defendant decided to roll the dice and use that as potential impeachment in the hopes of a not guilty. That was not unreasonable and defendant and the same attorney were present for the whole pre-trial motion. They were there when Officer Hammerhand specifically talked about the hoodie pocket, the hoodie pocket, the hoodie pocket. So then we get to trial and it's not until jury deliberations that defense counsel makes the motion for a mistrial. It's only then that he said, well, I ordered the transcript prior to the trial and I called the court reporter and I found out during trial that it was a mistake. And the defendant or the officer had always said a hoodie pocket. And I wanted to call this a rebuttal or an impeachment witness, but now that's not an option because he didn't misspeak and his testimony is not inconsistent in any manner. The line of defense made him go on, but that's not a due process violation. That's called gambling with the defense and the defendant made that conscious decision to do so and he simply lost. The court also agreed with the assistant state's attorney that this was not a basis for a mistrial. A mistrial requires an error of such gravity that the defendant was denied fundamental fairness and that the continuation of the proceedings would defeat the ends of justice. The defendant here was found guilty of delivery and possession with intent based on the credible, unimpeached testimony of not one, but two police officers. The defendant's right to a fair trial was never compromised in any way. Then it's not until the original motion for a new trial that the court reporter provides the copy of the amended transcript, which is now the correct one. The defendant again complained, I was denied a fair trial, and the court said, how is this the basis for a new trial? Again, the trial court was correct because the basis for a motion for a new trial is that the verdict is contrary to the manifest way to the evidence, or the findings of the jury so unreasonable, arbitrary, and not based on the evidence. That clearly is not the situation here. This is not a legal basis for either a motion for a mistrial or a motion for a new trial. We have an abuse of discretion on both of those standards. The defendant can't even come close to meeting that, nor has he endeavored to try. All the parties noted that this was the same defense attorney that was present and litigated the motion that was present at the trial. The trial judge in rejecting the amended motion for a new trial said, based on the totality of the transcript, which originally contained the error, the questioning by defense counsel indicates that Officer Hammerhan would have said hoodie pocket rather than coin pocket. There was a mistake in there that the defendant and his attorneys sought to take advantage of. However, that was not available when Officer Hammerhan refused to relent and indicated he never said coin pocket. That being said, I don't see, I find there was nothing sinister in the recording not being available and losing it that short period of time. The defendant was not denied any of his rights or due process rights based on the error in the transcript he hopes to capitalize on. That is simply what happened in this case. There was an error in the transcript. Defense counsel and defendant decided to gamble in the hopes that they could maybe impeach this officer. They should have known that that was not an option, but they gambled anyway and they lost. There is no due process rights here. There is no constitutional violation of any kind. This defense ‑‑ So was the transcript actually corrected or was it not corrected? No, it was corrected. The court reporter submitted the amended transcript at the motion for a new trial. And the trial judge found that that correction should be allowed. Is that correct? I assume so because I believe, I think Judge Brinson works to the effect that she's filing the motion for an amended transcript or works to that effect. I don't know because, again, we don't have the transcript in front of us. The defendant hasn't made that part of the record either. So are you asking if the amended transcript is part of the formal record? Well, you just answered that question. It's not. It's not. So the question is really whether or not the trial judge allowed the correction. Yes. Yes. Yeah. So this record couldn't be cleared. There was no impeachment to be had of Officer Hammerham. He never testified inconsistently in any way. The defendant took his trial and he lost. And in the meantime, did he ever say, you know what, I've learned in the middle of trial that this is a problem and we're going to plead guilty. It's not until jury deliberations that he makes a motion for this trial. He had plenty of time to change his mind if he wanted to plead guilty. Nobody was standing in the way. I can assure you nobody stands in the way of the defendant pleading guilty. He could have done that at any time. He chose not to do so. His argument is I would have pled guilty to the original offer, which is six years, I guess. I don't know what the offer was. My question is, was it ever spread of record anywhere that an offer had been made of a determinate number of years? No. It was just the public defender representing to the court that had I known Liz back then, I would have taken her off. Right. But we don't know what the offer was. Correct. Or even if there was an offer. And based on his background, the offer could have been much more significant than the eight years he received. So we have no idea what the offer was. If you have any further questions. This wasn't covered in the briefs. You can say it's my curiosity. He was convicted of eight years for possession with the intent to deliver cocaine, eight years for possession with the intent to deliver heroin, and six years for the delivery of heroin. Should the one act, one crime, should that be applied to any of this? Justice, I'm going to have trouble answering that. I haven't. That's not an issue before the court, so I don't want to go out. I don't know what the record is in that regard because I don't even remember exactly what the medimus was. So I'm unable to answer that question. I apologize for that. Based on all the reasons argued here today and those set forth in the people's brief, the people respectfully request that this court affirm all of the defendant's convictions. Thank you. Mr. Shandepaul. Yes, Your Honor. On the issue of whether a balance was made, the State's attorney in reply to the motion for a new trial indicated that the defendant could have taken the minimum. And as it indicated prior, before Madam State's attorney spoke, we can only presume it was six because it was a Class VI offense. So the prejudice there would be the fact that after trial, and because the defense relied on this transcript, he was given eight. But the record indicates that the State's attorney in reply to the motion for a new trial stated that the defendant could have taken the minimum. And so that's where six years comes from when I argue. In terms of the other errors that should have, as the State indicated, cued the defense attorney in that there was a mistake with the transcript, the amount of years that the officer worked on the force, it's not material. I'm not saying that when you read the transcript you should just glance, but that's not a material fact. And looking at a transcript, how many years were you employed with CPD? Spelling out the partner's name is not really a material fact. You may look at it, but I'm not deprecating the use of these transcripts. It's far from it. What I'm suggesting, though, is recovery, though, is a material fact. And defense was centered on recovery because, again, the issue of where these drugs are recovered is basically the heart of Mr. Alexander's defense. What difference does it make if it was found in his back pocket, his front pocket, his hoodie pocket, his socks? If the allegation is possession and the officers testified they recovered from his person this quantity of narcotics, I mean, I can see as a defense lawyer, and I admire your advocacy, but really the difference between a coin pocket, and I'd love to know what that is, and his hoodie pocket doesn't really support your argument that it was material because it was taken from his person. It goes to the credibility of the officer, though, in terms of if the standard is beyond a reasonable doubt, then the officer should get right where they recovered the drugs off the individual. So arguably that's the strategy for the defense. But reasonable doubt could be satisfied if the officer made a mistake and at one point said I recovered it from his socks and at the other point he testified separately that I recovered it from his inside coat pocket. Correct. That's a contradiction, but whether ultimately the defendant's convicted, it's not material where the drugs were found on him as long as they were found on him. So I struggle, I admire you as I say your advocacy, but when you get right down to it I don't get the materiality. Well, the materiality would be, the argument could be that there were no drugs recovered off the individual, that Mr. Alexander was just standing there, that the hand-to-hand transaction that they saw wasn't really a hand-to-hand transaction, that they stopped the buyer and the buyer just happened to have drugs, and then they said oh, because Mr. Alexander was there and had a conversation with this buyer. But where is the evidence that there's no drugs? I understand Mr. Alexander has an absolute right not to testify, that's not something the court can consider in making the final determination of the case, but where is the evidence that there's no drugs found? There was no evidence of that whatsoever in the case that there were no drugs found. Nobody testified to that. Nobody even argued that. Well, the burden of proof is on the State. Absolutely. So the State is saying yes. But what's with that evidence? If there's no evidence to contradict that evidence, that evidence stands. So when you say that it's a credibility issue, well, the issue there is that there was a question asked, did you recover drugs from the coin pocket, and the officer answered yes. But later on the question was asked, did you recover from this place or that place, and the officer said the hoodie pocket. So if you were going to look at credibility and sort of make a determination as to what was really said, you're probably more likely to believe what actually comes out of the witness' mouth as opposed to the witness answering a true or false question, or a yes or no question. But in the motion to quell it, the same officer is sworn, that's put into the motion, to testify honestly and accurately. So when the officer, well, when the Cole reporter says that the officer said coin pocket, there is the perfect impeachment presented to the defense. But if the officer testified, I never said that. But then the issue becomes again, and this is. . . And he didn't say that. He answered the question that was proven. That's correct. But that mistake in the transcript is what creates the problem. And so that's why I'm arguing that there was a due process issue, a violation, because defense relied on a bad mistake in the transcript that they didn't find out until the middle of the trial. Well, I guess where I come from, having tried a number of cases, if your impeachment had been perfected, if the court reporter testified, yes, I took the transcript that the motion to suppress, this question was asked and this answer was given, and it went to the jury and the defense argued, see, the motion to suppress, it said it came out of the coin pocket, and here he's saying it came out of the hoodie pocket. I really doubt whether the jury would have found that to be determinative of the officer's credibility because the charge was possession, separately assailed. Okay? It's not likely that the jury would have done a complete 100-degree reversal, 360 or 180, whatever the degrees are. And the real question is whether or not it was an abuse of the trial justice discretion to strike that purported impeachment. That's the real question before this court. Now, I'd like to ask you to address Justice Griffin's question where the defendant was found guilty of possession of cocaine, possession of heroin with intent to deliver, and delivery of heroin. And under the one crime, one act, one crime rule, what's your position on that? You didn't argue that in your brief and you didn't argue that here today. Do you have a position on that? He was convicted of three different, and one of them is really a lesser-included offense. It is, Your Honor, but admittedly, the way I see it, because these aren't consecutive sentences. It's more than just consecutive sentences. Correct. And whether or not it's concurrent, consecutive, there's three convictions versus two convictions. Any argument? I wasn't prepared to make that argument, Your Honor, so I would say, though, that no, I wouldn't make an argument. I don't feel comfortable making an argument on that issue. I apologize. Anything further, Chief? No, Your Honor. Thank you. Very well. Thank you both for your arguments in this regard. We'll take a matter under review. Thank you.